875 P.2d 198

**STATE of Arizona, Appellee/Respondent,**

v.

**Ruben Allen ALVARADO, Appellant/Petitioner.**

**Nos. 1 CA–CR 91–0537, 1 CA–CR 92–1168 PR.**

Court of Appeals of Arizona, Division 1, Department E.

March 8, 1994.

Review Denied June 21, 1994.*

* Martone, J., of the Supreme Court, voted to grant the petition for review.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Appeals Section, Susanna C. Pineda, Asst. Atty. Gen., Phoenix, for appellee/respondent.

Dean W. Trebesch, Maricopa County Public Defender by Lawrence S. Matthew, Phoenix, for appellant/petitioner.

Ruben Allen Alvarado, in pro. per.

## OPINION

NOYES, Judge.

Appellant was found guilty of offering to sell marijuana, a class three felony in violation of A.R.S. section 13–3405, with one prior felony conviction. After being sentenced to a presumptive term of 7.5 years in prison, Appellant filed a direct appeal. He later filed a

petition for post conviction relief, which was denied by the trial court. Appellant then filed a petition for review of that denial. We consolidated the appeal with the petition for review. We have jurisdiction pursuant to A.R.S. sections 12–120.21(A)(1) (1992), 13–4031 (1989), and –4033(A) (Supp.1992).

In the appeal, Appellant argues that his motion for judgment of acquittal should have been granted because there was no substantial evidence to support the conviction. *See* Ariz.R.Crim.P. 20. We conclude otherwise, but we also conclude that the case must be reversed and remanded for a new trial because the main legal theory argued by the State to support the conviction was an incorrect proposition of law regarding the *mens rea* element of the crime. Because the relief granted on the appeal moots the issues raised in the petition for review, we deny review.

### I.

The trial was to the court, Appellant having waived his right to a jury trial. The State's case was based on conversations Appellant had with undercover officer Flores. Both Flores and Appellant testified at trial. Viewed in a light most favorable to sustaining the conviction, the evidence is fairly summarized in this passage from the State's final argument:

> Mr. Alvarado said to Officer Flores if you give me $5,000 I will do the following. I will go to Douglas. I will free up a load of marijuana from Roberts. I will have that marijuana brought back to Phoenix on the Memorial Day weekend. I will sell the marijuana [to unnamed third parties], give you a hundred percent return on your investment and then I will give you an option on another 500 pounds of marijuana.

In his testimony, Flores explained the "option" part of the proposal as follows:

> Once he returned my money after a ten-day period—$5,000.00 plus an additional $5,000.00—he would go back to Douglas and pick up another load between two and four hundred pounds of marijuana. Once he brought it to Phoenix he said I would have the option. We already negotiated purchasing for $575.00 a pound and I

would have the option of buying the marijuana for that price.

The State later became concerned that Appellant might disappear if given $5,000, so Flores gave no money to Appellant, and Appellant was arrested based on the evidence summarized above.

The State originally charged Appellant with conspiracy to sell marijuana, but later dismissed that complaint and filed a new one charging Appellant with offering to sell marijuana. The State changed theories because it thought the evidence insufficient to prove an agreement between Appellant and Flores, but sufficient to prove an offer to sell marijuana even if, as anticipated, Appellant's defense was that he never intended to sell marijuana. The State reasoned that offering to sell marijuana is a strict liability crime and that the speaker's intentions are irrelevant.

As anticipated by the State, Appellant's defense at trial was that he had no intention of selling marijuana to Flores, his intention was to defraud Flores of $5,000 by taking his money and disappearing. This defense was weakened by circumstantial evidence, including Appellant's testimony that he had sold large quantities of marijuana in the past.

### II.

■ A motion for a judgment of acquittal should be granted if the State has failed to produce "substantial evidence to warrant a conviction." *See* Ariz.R.Crim.P. 20. Substantial evidence is evidence that "reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *State v. Jones*, 125 Ariz. 417, 419, 610 P.2d 51, 53 (1980). In considering the sufficiency of the evidence, we evaluate the entire record, including Appellant's testimony. *See State v. Nunez*, 167 Ariz. 272, 279, 806 P.2d 861, 868 (1991). To set aside a verdict for insufficient evidence, "it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support the conclusion reached by the [trier-of-fact]." *State v. Arredondo*, 155 Ariz. 314, 316, 746 P.2d 484, 486 (1987).

Although the State relied at trial and on appeal mainly on its strict liability theory, it has also argued the backup theory that Appellant did, in fact, make a "real" offer to sell marijuana to Flores and was therefore guilty on that basis as well. Because the court provided no explanation for the verdict, we consider all theories argued by the State in support of that verdict.

## A.

A.R.S. section 13–3405(A)(4) provides: "A person shall not knowingly ... offer to sell or transfer marijuana."

The State's main theory is that, if the speaker knows what he says, and if what he says sounds to a reasonable person like an offer to sell marijuana, the speaker is guilty of offering to sell marijuana no matter what his intentions. This theory lacks a necessary *mens rea* because it would criminalize mere words, even those spoken without criminal intent. *See*, e.g., *State v. Williams,* 144 Ariz. 487, 488, 698 P.2d 732, 733 (1985) (holding that the general rule is that state must demonstrate some degree of wrongful intent in criminal cases); *Spitz v. City of Phoenix,* 127 Ariz. 405, 407, 621 P.2d 911, 913 (1980) (stating that requirement of *mens rea* in criminal cases is rule rather than exception).

■■■ "Knowingly" is defined in A.R.S. section 13–105(7)(b) (Supp.1993), which provides:

> "Knowingly" means, with respect to conduct or to a circumstance described by a statute defining an offense, that a person is aware or believes that his or her conduct is of that nature or that the circumstance exists. It does not require any knowledge of the unlawfulness of the act or omission.

The word "conduct" in the definition of "knowingly" refers to something more than the mere utterance of words. *See State v. Padilla,* 169 Ariz. 70, 72, 817 P.2d 15, 17 (App.1991). To commit the crime of offering to sell marijuana, a person must be aware or believe that he has made an offer to sell the substance, not that he has told a lie or made a joke. Division Two of this Court recently reached this same conclusion in *State v.*

*Strong,* 178 Ariz. 507, 508, 875 P.2d 166, 167 (App.1993):

> The conduct proscribed by the statute in question here is an offer to sell narcotic drugs. To be convicted, a defendant must be aware or believe that he or she is making such an offer. This clearly would not include the sort of ["fraudulent, insincere, or made in jest"] conduct described by appellant.

*See also State v. Douglas,* 120 Ariz. 613, 615, 587 P.2d 1190, 1192 (App.1978) (stating that "[i]f appellants knew their offer was false, the requisite intent to sell a narcotic drug would be lacking"). Although the State argued otherwise, Appellant could not be convicted of offering to sell marijuana to Flores if his only intention was to take Flores' money and disappear.

## B.

■■■ One theory of liability argued by the State that we will mention parenthetically, because the theory was properly abandoned prior to trial, was that the offerees were those unnamed third parties to whom Appellant would deliver the marijuana "freed up" by the $5,000 from Flores. This argument was based upon the assumption that Appellant meant what he said to Flores about marijuana. Even so, this theory lacks a *corpus delicti* and, therefore, the evidence to support this theory is insufficient as a matter of law. *See State v. Gillies,* 135 Ariz. 500, 506, 662 P.2d 1007, 1013 (1983) ("An accused may not be convicted on his own uncorroborated confessions."). It is correct to say that when statements constitute a crime, as they do in an "offer to sell" case, there need be no evidence other than the statements themselves and criminal intent. *See State v. Daugherty,* 173 Ariz. 548, 552, 845 P.2d 474, 478 (App.1992). In this case, however, the State did not have any evidence of Appellant's "offer" to unnamed third parties, it only had evidence of Appellant's statements to Flores. Appellant cannot be convicted of offering to sell marijuana to one party when the only evidence of that offer is his "uncorroborated confession" to some other party.

## C.

■ The backup theory relied on by the State at trial as an alternative to the "strict liability" theory is that if Appellant meant what he said to Flores about marijuana, that conduct was an offer to sell marijuana to Flores. Although it is a close question, we agree that the evidence was sufficient to support a guilty verdict based on this theory of liability.

■ An "offer" is a proposal to enter into a contract on the terms contained in the offer, *see, e.g., K–Line Builders, Inc. v. First Fed. Sav. & Loan Ass'n,* 139 Ariz. 209, 212, 677 P.2d 1317, 1320 (App.1983), and that is what Appellant did here. He made a proposal to Flores, one of the terms of which was the sale of marijuana to Flores. Although what Appellant said here would not support a lawsuit for specific performance, his proposal did contain all terms necessary to support a conviction for offering to sell marijuana. The product and the price were clearly stated, marijuana at $575.00 per pound. The time for the sale was not precisely stated, but a reasonable time could fairly be inferred from the proposal. The weight of marijuana was not precisely stated, but precise weight is not an element of this crime, and the offer definitely involved some real weight, 200 to 400 pounds.

If the trial court found that Appellant meant what he said to Flores about marijuana, the trial court could also have found Appellant guilty of offering to sell marijuana to Flores. To this extent, then, we find substantial evidence to support the verdict.

## III.

■ We now address whether the State's strict liability theory taints the conviction. The State argued two alternative legal theories at trial, and its main theory was based on a misunderstanding about the *mens rea* element of the crime. The trial court's general verdict does not indicate on which legal theory it was based. If this had been a jury trial, we could look at the record made in settling jury instructions, and at the instructions themselves, and know the court's ruling on the elements of the crime. If the court had instructed the jury on the strict liability theory urged by the State, we would reverse and remand for a new trial, regardless of the other instructions, because the verdict could have been based on an incorrect statement of the elements of the crime. *Cf. State v. Rea,* 145 Ariz. 298, 299, 701 P.2d 6, 7 (App.1985) (reversing and remanding for new trial when jury was instructed on an improper legal theory and was not instructed on proper theory).

Because there are no jury instructions in this case, we look to the record to find any indication of whether the court was misled by the State's strict liability theory. We begin our inquiry with the presumption that the court applied the proper legal theory in the case. "Trial judges are presumed to know the law and to apply it in making their decisions." *Walton v. Arizona,* 497 U.S. 639, 653, 110 S.Ct. 3047, 3057, 111 L.Ed.2d 511 (1990).

This presumption notwithstanding, we cannot conclude that the trial court rejected the strict liability theory in this case. First, the State placed great reliance on that incorrect theory, arguing it extensively in the pre-trial, mid-trial, and post-trial stages of the case. On each occasion, Appellant's counsel responded with argument and authority in opposition. Because so much of the battle at trial was about the elements of the crime, we find it probable that the verdict, which was the one sought by the State, was based on the legal theory argued most vigorously by the State, the strict liability theory.

We also find it significant that the record contains no expression by the trial court of acceptance or rejection of the State's strict liability theory. We find it probable that, if the court had ever been persuaded that the State's strict liability theory was an incorrect proposition of law, it would have so advised the parties of that conclusion, if for no other reason than to eliminate further waste of time on a bad legal argument about the elements of the crime. The State made the strict liability theory the main issue in the case, and the trial court never expressed rejection of that theory. Although we are not advised on which legal theory the verdict was based, this record erodes any presump-

544

tion that it was based on the proper legal theory.

■ We have considered remanding the case with directions that the trial court think back to the verdict and specify the legal theory on which it was based. If the verdict was based on strict liability, the court would enter a judgment of acquittal; if it was based on proper *mens rea*, it would re-affirm the verdict and sentence. Remands of this type have been sanctioned to resolve ambiguities in sentencing proceedings. *See, e.g., State v. Ojeda*, 159 Ariz. 560, 562, 769 P.2d 1006, 1008 (1989) (remanding for new disposition hearing unless record "clearly shows the trial judge would have made the same disposition even without consideration of the violations set aside on appeal"); *State v. Weaver*, 158 Ariz. 407, 410, 762 P.2d 1361, 1364 (App.1988) (remanding for resentencing because trial court erroneously thought consecutive sentences were mandatory, not discretionary).

We have not found any authority for a post-judgment remand with directions that a trial court state the legal theory on which it based a guilty verdict in a criminal case. We conclude that such a remand would be unwise, if not unconstitutional, on the record before us. No matter how high our regard for the knowledge and integrity (and memory) of the trial court, a remand in this case with directions to specify whether the verdict was based on the right or the wrong legal theory argued by the State would have the appearance of giving the State a second try at convicting Appellant without giving Appellant the due process of a second trial.

We conclude that the proper resolution here is to give each party the opportunity to have a second trial, one in which there is no confusion about the *mens rea* element of the crime. The judgment and conviction are reversed, and the matter is remanded for a new trial.

CLABORNE, P.J., concurs.

KLEINSCHMIDT, Judge, dissenting in part.

I agree with the majority in all respects except as to the remedy. I believe that a new trial is unnecessary. I would remand to the trial judge with directions, not to reconsider the case in light of the law set out in this opinion, but simply and solely to state the basis for the verdict he entered. If the trial judge accepted the State's theory that all it needed to do was prove that the Appellant said the words that constituted the offer to sell and found the Appellant guilty on that basis, the Appellant is entitled to be acquitted. If he found the Appellant guilty because he believed the Appellant really intended to offer to sell marijuana and was not just trying to defraud Flores, the conviction should stand.