NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

JESSE SCOTT FULCHER, *Appellant*.

No. 1 CA-CR 20-0518
FILED 9-9-2021

Appeal from the Superior Court in Mohave County
No. S8015CR201901010
The Honorable Douglas R. Camacho, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Casey D. Ball
*Counsel for Appellee*

Mohave County Legal Advocate's Office, Kingman
By Jill L. Evans
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Cynthia J. Bailey and Judge Jennifer M. Perkins joined.

---

**C R U Z**, Judge:

¶1        Jesse Scott Fulcher ("Fulcher") appeals his convictions and sentences for molestation of a child, sexual abuse, and offering to transfer marijuana, arguing insufficient evidence supports his convictions. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        Fulcher was a close family friend of the victims, K.C., H.P., and L.D. All three victims disclosed that Fulcher touched their breasts, with K.C. disclosing he touched her genitals. K.C. and L.D. further reported that Fulcher offered to give them marijuana.

¶3        The State charged Fulcher with one count of molestation of a child, a class 2 felony and dangerous crime against children; four counts of sexual abuse of a victim under fifteen years of age, class 3 felonies and dangerous crimes against children; two counts of sexual abuse of a victim fifteen years of age or older, class 5 felonies; and two counts of offering to transfer marijuana, class 3 felonies. Fulcher waived his right to a jury trial, and the superior court held a bench trial.

¶4        At trial, the mother of K.C. and H.P. testified that she considered Fulcher a member of the family and trusted him to be alone with the victims. She allowed Fulcher, a licensed massage therapist, to massage the victims' shoulders. The family cut ties with Fulcher after K.C. disclosed that he had been touching her inappropriately. Around this time, Fulcher text messaged the family and expressed disbelief that they could "condemn" him for making a "mistake."

¶5        K.C. testified that Fulcher regularly gave her massages. On one occasion, while K.C. had her head on Fulcher's lap, he began massaging her upper thigh. Fulcher moved his hand beneath her underwear and "grazed" her genitals. On a second occasion, while in a swimming pool, Fulcher pulled up K.C.'s swimsuit and massaged her exposed breasts. In doing so, Fulcher touched the fatty tissue of the tops and bottoms of K.C.'s

breasts and "grazed" her nipples. This became an almost daily occurrence, with Fulcher touching K.C.'s breasts under the guise of a massage "hundreds or maybe thousands" of times. Fulcher's conduct caused K.C. fear and confusion, and she often made excuses to get away from him.

¶6 K.C. testified that she initially enjoyed Fulcher's company and confided in him. Fulcher began divulging personal, sometimes sexual details, admitting to K.C. that he had problematic thoughts about the victims and that he would date her if he were younger. During one of these conversations, Fulcher told K.C. that if she wanted to experiment with drugs, he would provide her with "safe" marijuana not "laced" with any other substances. K.C. was between thirteen and fifteen years old when the offenses occurred.

¶7 H.P. testified that Fulcher regularly gave her massages, eventually moving under her bra to rub the fatty tissue of the tops and sides of her breasts. In doing so, he would "sometimes" touch her nipples. As with K.C., Fulcher once mentioned that he would be attracted to H.P. if he were younger. Although H.P. could not remember specific dates, she testified that the offenses occurred "almost every time he was over" before she was fourteen years old. During this period, H.P. saw Fulcher move his hand under K.C.'s shirt and massage near her breast area.

¶8 L.D. testified that, during a massage, Fulcher moved his hands under her shirt to rub the fatty tissue of the tops and sides of her breasts. L.D. did not give Fulcher permission to touch her breasts and she made an excuse to get away from him. L.D. testified that she initially trusted Fulcher and they confided in each other, with him revealing details about his romantic and sexual history. In one of these conversations, L.D. told Fulcher she struggled with substance abuse issues. Instead of offering help, Fulcher offered to buy L.D. marijuana. L.D. testified that she knew Fulcher made the other victims uncomfortable and she sensed that they were experiencing similar abuse. K.C. and H.P. eventually asked L.D. "to find a way to help them get out of it[.]" L.D. was between the ages of eighteen and nineteen years old when the offenses occurred.

¶9 An officer, who conducted the initial interviews, testified that the victims did not appear coached and seemed genuinely relieved to tell their stories. The officer testified that Fulcher neither denied nor admitted the allegations. A detective, who conducted the follow-up interviews, testified that Fulcher denied any inappropriate conduct but admitted to massaging the victims and rubbing their "pec area." Fulcher further admitted to speaking to K.C. about his romantic and sexual history. A blind

expert[1] on sexual abuse testified that offenders will break down a victim's barriers by building trust and incorporating "innocent" touching into their relationship. In some instances, the offender may introduce a victim to drugs or alcohol.

¶10        After the State's case-in-chief, Fulcher moved for a judgment of acquittal under Arizona Rule of Criminal Procedure 20. The superior court denied the motion, finding the State presented sufficient evidence to proceed. The superior court specifically rejected Fulcher's assertion that the evidence did not establish touching of the breasts under the statute governing disciplinary actions for massage therapists, Arizona Revised Statutes ("A.R.S.") § 32-4253(B)(1), which defines the term "breast" as "any portion of the female breast below a point immediately above the top of the areola." The superior court reasoned that the criminal code had not defined the term and it was therefore a "factual determination as to whether the evidence that has been presented so far shows that the breast has been touched."

¶11        Fulcher testified on his own behalf and denied the allegations. Fulcher, however, admitted to massaging the victims, rubbing K.C.'s upper thigh and pectoral area, and moving the victims' clothing during massages. He further admitted to telling the victims he would want his children to use marijuana in a safe environment. A character witness testified that Fulcher spent time with his young children and he never had concerns about Fulcher's conduct. The witness did not know the victims or K.C.'s and H.P.'s mother.

¶12        The superior court found Fulcher guilty as charged. In reaching its verdict, the superior court found the victims had no motive to lie and provided credible testimony. The superior court found the date ranges and victims' ages proven through dates of birth, residential history, and the location of the offenses. Again, the superior court rejected Fulcher's argument that the State failed to prove touching of the breasts as defined by A.R.S. § 32-4253(B)(1) but noted the contact would amount to sexual abuse even if that definition controlled.

¶13        The superior court sentenced Fulcher to an aggregate term of 42.5 years' imprisonment. He timely appealed, and we have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

---

[1]        A "blind expert" is one who has not reviewed case-specific evidence and will not testify about the events of the case at trial.

**DISCUSSION**

I.      Sufficiency of the Evidence

**¶14**        Fulcher argues insufficient evidence supports his convictions. We review the sufficiency of the evidence de novo, viewing the facts in the light most favorable to sustaining the verdict. *State v. Bible*, 175 Ariz. 549, 595 (1993). We will reverse only if a complete absence of probative facts supports the convictions. *State v. Scott*, 113 Ariz. 423, 424-25 (1976).

**¶15**        We will uphold a superior court's "finding of guilt if it is supported by substantial evidence, which may be either circumstantial or direct." *State v. Garza*, 196 Ariz. 210, 211, ¶ 3 (App. 1999) (citations omitted). Substantial evidence is "such proof that 'reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt.'" *State v. Mathers*, 165 Ariz. 64, 67 (1990) (quoting *State v. Jones*, 125 Ariz. 417, 419 (1980)). In reviewing sufficiency of the evidence, we compare the evidence "against the statutorily required elements of the offense," *State v. Pena*, 209 Ariz. 503, 505, ¶ 8 (App. 2005), but will neither reweigh conflicting evidence nor assess the credibility of witnesses, *State v. Buccheri-Bianca*, 233 Ariz. 324, 334, ¶ 38 (App. 2013). Even if uncorroborated, a victim's testimony is sufficient to support a conviction "unless the story is physically impossible or so incredible that no reasonable person could believe it." *State v. Williams*, 111 Ariz. 175, 177-78 (1974).

A.      Molestation of a Child

**¶16**        A person commits molestation of a child if he intentionally or knowingly engages in sexual contact with a minor under fifteen years of age. A.R.S. § 13-1410(A). As relevant here, sexual contact includes "any direct or indirect touching, fondling or manipulating of any part of the genitals." A.R.S. § 13-1401(A)(3)(a). This does not include contact "that an objective, reasonable person would recognize as normal and reasonable under the circumstances." A.R.S. § 13-1401(A)(3)(b). The State, however, is not required to prove sexual motivation as an element of the offense. *See State v. Holle*, 240 Ariz. 300, 301, ¶ 1 (2016).

**¶17**        K.C. testified that Fulcher massaged her upper thigh and quickly touched her genitals. Even if indirect, this contact exceeded that which would be perceived as objectively "normal and reasonable." *See* A.R.S. § 13-1401(A)(3)(b). Although the State need not prove sexual motivation, Fulcher's behavior during the period of abuse demonstrated his attraction to K.C. and intent to commit the offense. The evidence proved that K.C. was under fifteen years of age and the offense occurred within the

charged date range. Sufficient evidence supports Fulcher's conviction for molestation of K.C.

B.     Sexual Abuse

¶18     A person commits sexual abuse of a victim under fifteen years of age if he intentionally or knowingly engages in sexual contact involving the female breast. A.R.S. § 13-1404(A). If the victim is fifteen years of age or older, the State must also prove the person acted without the victim's consent. A.R.S. § 13-1404(A). Lack of consent may be established by the facts and circumstances of the abuse. *See State v. Bolivar*, 250 Ariz. 213, 229, ¶¶ 60-62 (App. 2020). As relevant here, sexual contact includes "any direct or indirect touching, fondling or manipulating of any part of the . . . female breast." A.R.S. § 13-1401(A)(3)(a). As with molestation of a child, the State is not required to prove sexual motivation, *Holle*, 240 Ariz. at 301, ¶ 1, but the contact must exceed that which is "normal and reasonable under the circumstances," A.R.S. § 13-1401(A)(3)(b).

¶19     To the extent Fulcher argues the narrow definition of "breast" under A.R.S. § 32-4253(B)(1) controls, we disagree. The definition found in A.R.S. § 32-4253(B)(1) is expressly limited to disciplinary actions for massage therapists and cannot be applied to the criminal code. *See* A.R.S. § 32-4253(B); *see also State v. Prince*, 226 Ariz. 516, 530, ¶ 38 (2011). Because the criminal code does not define "breast," as used in A.R.S. §§ 13-1401 and -1404, we may look to the dictionary definition to ascertain the term's "plain and ordinary meaning." *State v. Clow*, 242 Ariz. 68, 70, ¶ 10 (App. 2017) (citation omitted). The dictionary definition of "breast" includes the "glandular organs" on the female chest and the "superior ventral surface of the human body, extending from the neck to the abdomen." American Heritage Dictionary (5th ed. 2020). Based on the plain meaning of the term, Fulcher's contact constituted touching of the female breast. *See* A.R.S. § 13-1401(A)(3)(a).

¶20     K.C. testified that Fulcher touched the fatty tissue around her breast and quickly touched her nipples. This occurred on an almost daily basis and caused her extreme discomfort. The evidence proved that K.C. was under fifteen years of age for two counts and fifteen years of age for one count, all within the charged date ranges. Where necessary, the evidence established Fulcher lacked K.C.'s consent. H.P. testified that Fulcher repeatedly touched the fatty tissue of the tops and sides of her breasts and quickly touched her nipples. The evidence proved that H.P. was under fifteen years of age for two counts, both within the charged date ranges. L.D. testified that Fulcher touched the fatty tissue of the tops and

sides of her breasts. The surrounding circumstances of the contact, including L.D.'s demeanor, established her lack of consent. L.D.'s testimony proved one count occurred during the charged date range.

**¶21**      For all victims, Fulcher's behavior was indicative of the grooming tactics described by the State's blind expert. Fulcher ingratiated himself with the victims, manipulated their trust, and used "innocent" touching to breakdown their physical barriers. Fulcher's conduct and statements demonstrated his attraction to the victims and intent to commit the offenses. Moreover, Fulcher exceeded that which an objective, reasonable person would "recognize as normal and reasonable under the circumstances." A.R.S. § 13-1401(A)(3)(b). Sufficient evidence supports Fulcher's convictions for sexual abuse.

      C.      Offer to Transfer Marijuana

**¶22**      A person commits offering to transfer marijuana by knowingly offering to "furnish, deliver or give away" marijuana weighing less than two pounds. *See* A.R.S. §§ 13-3401(37), -3405(A)(4), (B)(10). Although not defined by statute, we have held that an "offer" within the context of drug sales can be made with statements and criminal intent alone. *See State v. Daugherty*, 173 Ariz. 548, 552 (App. 1992). The State is not required to prove the drugs were "produced or that money changed hands." *State v. Strong*, 178 Ariz. 507, 509 (App. 1993).

**¶23**      Relying on *State v. Alvarado*, 178 Ariz. 539 (App. 1994), Fulcher argues the State failed to prove his statements constituted an "offer." In *Alvarado*, we held that the offense of offering to sell marijuana requires proof a person was aware of or believed that he "made an offer to sell the substance, not that he has told a lie or made a joke." *Id.* at 542. Looking to the civil law definition of "offer" as a "proposal to enter into a contract on the terms contained in the offer," we found the defendant made such a proposal by specifying a price, type of drug, and general timeframe. *Id.* at 543 (citing *K-Line Builders, Inc. v. First Fed. Sav. & Loan Ass'n*, 139 Ariz. 209, 212 (App. 1983)). This holding does not require Fulcher's convictions for offering to transfer marijuana be vacated.

**¶24**      Here, K.C. and L.D. testified that Fulcher offered to give them marijuana. Nothing from the record indicates these statements were false or made in jest. The blind expert's testimony that the use of drugs as a common grooming tactic further establishes Fulcher's intent to give the victims marijuana. Fulcher listed a specific type of drug and a general time of transfer could be inferred. *See Alvarado*, 178 Ariz. at 543. Unlike the

defendant in *Alvarado*, Fulcher's conviction for offering to transfer marijuana does not require proof of an intent to sell marijuana or communicate its monetary value. *See id.* Fulcher's statements, made in earnest, proved he intended to "furnish, deliver or give away" marijuana to both victims during the charged date ranges. *See* A.R.S. § 13-3401(37). Sufficient evidence supports Fulcher's convictions for two counts of offering to transfer marijuana.

¶25　　　　For all counts, we will not reexamine conflicts in testimony or reweigh the evidence. *See Buccheri-Bianca*, 233 Ariz. at 334, ¶ 38. We therefore defer to the superior court's findings as to the victims' credibility and the weight afforded to their testimony.

## CONCLUSION

¶26　　　　We affirm Fulcher's convictions and resulting sentences.

